City of McKeesport v. McKeesport and Reynoldton Passenger Railway Company, Appellant.

*Municipalities — Street railways — Ordinances — License tax — Consideration for the use of streets.*

1. The Constitution secures to all municipal corporations the exclusive right to either refuse or consent to the construction of street railways within their limits. Where consent is given the municipality may attach to its consent such terms and conditions as it may deem proper and if the railway company accepts those conditions it is bound by them and must discharge all duties and obligations imposed upon it by the ordinance granting such consent.

2. A borough passed an ordinance granting the right to a street railway company to construct and operate its railway on certain borough streets, the ordinance providing that no license for "borough purposes" should be levied upon the company until the expiration of five years after it began to operate its railway, "and after the expiration of said period of five years said company shall pay into the borough treasury such sums as license as council may hereafter provide for." After the expiration of the five-year period and after the borough had been incorporated into a city, the city passed an ordinance providing that the railway company should pay for license to the city the sum of $8,000.00 per annum. In an action by the city against the railway company to recover the license charge for certain years, the company defended upon the ground that the provision of the ordinance referred to any general license that might be imposed upon railways and not to a license specifically imposed upon it, and further that the city as a city of the third class had no power to levy the license. *Held,* that the charge as made was not properly a license fee but was the con-

sideration charged by the municipality under the contract for granting consent to the railway company to use and occupy the city streets, and was therefore collectible.

3. In such case where the affidavit of defense set up that the charge was excessive and unreasonable but when no testimony was offered in support of such allegation it must be assumed that the amount fixed in the ordinance was reasonable.

Argued Oct. 22, 1915. Appeals, Nos. 70 and 71, Oct. T., 1915, by defendants, from judgment of C. P. Allegheny Co., Fourth T., 1911, No. 314, and Fourth T., 1911, No. 315, on verdict for plaintiffs in cases of City of McKeesport, a municipal corporation, v. McKeesport and Reynoldton Passenger Railway Company, a corporation, Glenwood and Dravosburg Electric Street Railway Company, a corporation, United Traction Company of Pittsburgh, a corporation, and the Pittsburgh Railways Company, a corporation, owners, lessees, successors, assigns and operators of the Dravosburg, Reynoldton and McKeesport Passenger Railway Company, and City of McKeesport, a municipal corporation, v. McKeesport and Reynoldton Passenger Railway Company, a corporation; Glenwood and Dravosburg Electric Street Railway Company, a corporation, United Traction Company of Pittsburgh, a corporation, and the Pittsburgh Railways Company, a corporation, owners, lessees, successors, assigns or operators of the McKeesport Passenger Railway Company, a corporation. Before BROWN, C. J., MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover the amount of a license tax by a municipality.

The facts appear from the following opinion by FRAZER, P. J., filed at No. 315, Fourth Term, 1911, sur defendant's motion for judgment n. o. v.:

The City of McKeesport is a city of the third class, and the successor of the Borough of McKeesport. By an ordinance of the borough, approved September 22, 1886, the McKeesport Passenger Railway Company was

granted the right to construct and operate a street railway over and upon certain streets in that municipality. Among the provisions of the ordinance was one to the effect that no license for "borough purposes" should be levied upon the company until the expiration of five years after the company begins to operate its railway, "and after the expiration of said period of five years said company shall pay into the borough treasury such sums as license as council may hereafter provide for." Subsequently, on March 4, 1890, a second ordinance was adopted by the borough, granting additional privileges to the McKeesport Passenger Railway Company, and providing that "said company shall for a period of fifteen years from and after the completion of the lines aforesaid be exempt from the payment of any license to the borough for the franchises granted by its several ordinances." These ordinances were accepted by the railway company, its railway constructed, and it has been operated thereunder since 1891. By an ordinance approved October 11, 1905, it is provided, inter alia, as follows: "Sec. 1. . . . . . . That the McKeesport Passenger Railway Company shall hereafter pay for license to the City of McKeesport, successor to the Borough of McKeesport, for city purposes, for the franchises granted by said ordinance, the sum of $8,000.00 per annum." By various mergers, consolidation and leases the property and franchises of the McKeesport Passenger Railway Company became vested in the United Traction Company, which company is now and has been since December 30, 1901, operated by the Pittsburgh Railways Company. This action is to recover the amount of the license provided for in the ordinance of October 11, 1905, for the years 1907, 1908, 1909, 1910 and 1911, with interest on each amount, and ten per cent. penalty for failure to pay as provided in the ordinance referred to. Defendant companies, at the trial, denied liability under the ordinances above referred to, claiming that the provision in the ordinance of September 22, 1886, referred

to any general license that might be imposed by the
borough upon railway companies, and not a license
specifically imposed upon the McKeesport Passenger
Railway Company; and further, that under the laws of
this Commonwealth the City of McKeesport, which is a
city of the third class, has no power or authority to levy
such license upon a railway company as is imposed by
the ordinance of October 11, 1905; also that the license
sued for is unreasonable, unjust and unconstitutional.
At the trial a verdict was rendered in favor of plaintiff,
and this motion followed.

The reasons urged in support of the motion are the
same as those set up to prevent a recovery at the time of
the trial. At that time we were of opinion that the de-
fense was not sufficient, and have not been convinced
that we were in error in reaching that conclusion. The
Constitution secures to all municipal corporations the
exclusive right to either refuse or consent to the construc-
tion of street railways within their limits. If consent is
given, it is settled beyond doubt that the municipality
may attach to its consent such terms and conditions as
it may deem proper. If the railway company accepts
those conditions it is bound by them and must discharge
all duties and obligations imposed upon it by the or-
dinance granting such consent. One of the leading and
early cases touching this question is Allegheny City v.
Millvale, Etna & Sharpsburg St. Ry. Co., 159 Pa. 411.
That case holds that the Constitution vests absolute dis-
cretion in the municipality, and that the local body in
granting its consent to the construction of a street rail-
way within its limits, may impose conditions under
which the right may be enjoyed by the railway company.
The question involved here is not the right of the city to
collect either a license fee from the defendant, as such fee
is generally understood to be, or a tax upon its property.
The amount sued for is the consideration charged by the
municipality for granting consent to the railway com-
pany to occupy and use its streets in accordance with its

contract with the company. The fact that the ordinance calls the consideration a license fee does not change its character. The charge still remains the price to be paid for the privilege of using the streets of plaintiff city. That the city, being the successor of the borough, succeeded to all the rights of the borough, and therefore, so far as this case is concerned, stands in the place of the borough with the right to collect the license or charge fixed by the ordinance of October 11, 1905, there can be no doubt. Defendants' counsel cited as supporting their contention, City of McKeesport v. McKeesport & Reynoldton Pass. Ry. Co., 2 Pa. Superior Ct. 242. As we understand that case it does not rule the question raised here. That case relates solely to the right of the municipality to collect a license fee on the company's trolley poles, by virtue of an ordinance enacted under its police power. In that case the ordinance applied to all telephone, telegraph, electric light and street car companies using the streets of the city, the purpose being to provide for the payment of the expense incurred by the city in the inspection of electric wires and other dangerous agencies used as part of the equipment of public service corporations, and does not touch upon the power of the city to contract with street railway companies for the occupancy and use of streets. While the affidavit of defense sets up that the charge is excessive and unreasonable, no testimony was offered in support of that allegation. We must therefore assume that the amount fixed in the ordinance is reasonable.

Being of opinion that the case is within the rule laid down in Allegheny v. Millvale, Etna & Sharpsburg Ry. Co., supra, and other cases of that class, the motion for judgment non obstante veredicto must be refused.

At No. 314, Fourth Term, 1911, FRAZER, P. J., filed the following opinion:

The City of McKeesport is a city of the third class, and the former Borough of Reynoldton is now and has been for a number of years the tenth ward of that city.

By an ordinance of the Borough of Reynoldton, approved July 31, 1890, the Dravosburg, Reynoldton & McKeesport Pass. Ry. Co. was granted the right to construct and operate a street railway over and upon certain streets in that borough. Among the provisions of the ordinance was one to the effect "That no license tax for borough purposes shall be levied upon said company for the franchise granted by this ordinance until after the expiration of five (5) years from and after the date said company commences operating its road, and after the expiration of said five (5) years said company shall pay into the borough treasury such sums as license as council may hereafter provide for." Under the provisions of that ordinance the railway company constructed its road and has operated the same since the year 189.. more than five years prior to 1905. By the annexation of the Borough of Reynoldton to the City of McKeesport on the 20th day of November, 1897, the city succeeded to all the rights of the borough, and so far as this case is concerned stands in the place of the borough. By an ordinance duly passed and approved by the City of McKeesport on October 11, 1905, it was provided, inter alia, as follows: "That the said Dravosburg, Reynoldton & McKeesport Passenger Railway Company shall hereafter pay for license to the City of McKeesport, successor to the Borough of Reynoldton, for city purposes, for the franchise granted by the aforesaid ordinance, the sum of two thousand ($2,000.00) dollars per annum."

This action is based upon the ordinances above referred to, and is to recover the amount of the license provided for in the ordinance of October 11, 1905, for the years 1906, 1907, 1908, 1909, 1910 and 1911, with interest on each amount and ten per cent. penalty for failure to pay as provided in the ordinance. At the trial defendants denied liability, claiming that the provisions of the original ordinance referred to any general license that might be imposed by the borough upon railway

companies, and not a license specifically imposed upon the Dravosburg, Reynoldton & McKeesport Passenger Railway Company; and further, that under the laws of this Commonwealth the City of McKeesport, which is a city of the third class, is without power or authority to levy such license upon a railway company as is imposed by the ordinance of October 11, 1905; also that the license sued for is unreasonable, unjust and unconstitutional. At the trial a verdict was rendered in favor of plaintiff, and this motion followed.

The questions raised here are identical with those in City of McKeesport v. McKeesport Passenger Railway Company, No. 315, Fourth Term, 1911, except as to the amount claimed to be due. In that case the right of the municipality to recover was considered and determined in its favor. For the reasons given in the opinion this day filed in that case this motion for judgment for defendant non obstante veredicto is refused.

*Error assigned* in each case was in denying the motion of the defendants for judgment n. o. v.

*Edwin W. Smith,* of *Reed, Smith, Shaw & Beal,* for appellant.

*Robbin B. Wolf,* with him *W. E. Newlin,* City Solicitor, and *A. M. Simon,* for appellee.

PER CURIAM, January 3, 1916:

These two appeals involve the same questions and were argued together. A refusal of the prayer for an instruction in each case that the plaintiff was entitled to recover would have been error, and each judgment is affirmed for the reasons given by the learned president judge of the court below in denying the motion of the defendant for judgment non obstante veredicto and directing judgment to be entered on the verdict in No. 315,

Fourth Term, 1911. What is there said applies equally to the defense of the appellants in No. 314, Fourth Term.

Judgments affirmed.