Philadelphia, Appellant, *v.* Holmes Electric
Protective Company of Philadelphia,
Appellant.

274

Argued May 9, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Abraham Wernick,* with him *A. L. Shapiro,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant, No. 167 and for appellee, No. 170.

*Benjamin O. Frick,* for appellee, No. 167, and for appellant, No. 170.

OPINION BY MR. JUSTICE STERN, June 19, 1939:

By ordinance of June 4, 1906, the City of Philadelphia granted permission to defendant corporation "to carry its wires under and beneath the highways of the City of Philadelphia for connecting buildings occupied by its customers with its central station," and to use and operate such wires "for the purpose of conducting the business of conveying for its customers a burglar alarm, night watch and fire alarm signal system." Section 5 of the ordinance provided that defendant should pay to the City, on the first day of March in each and every year, "two per cent of the gross receipts of said Corporation up to thirty thousand (30,000) dollars, and three per cent thereafter up to forty thousand (40,000) dollars, and five per cent thereafter, from all its business done in the said City of Philadelphia, and for the ascertainment of the amount due to the City of Philadelphia the said Company shall keep books of account within the City of Philadelphia containing an account of all the business done and transacted within said City, which shall be subject to the inspection of the City Treasurer or by his duly authorized and designated representative."

The present action in assumpsit was instituted by the City to recover sums alleged to be due under this ordinance from March 1, 1918, to March 1, 1937, in excess of payments made by defendant for those years.

Defendant annually furnished sworn returns of its gross receipts upon the basis of which it remitted for the percentages due. In 1937 the City Controller audited its records and ascertained that whereas for sev-

eral of the earlier years it had included in its returns certain items of gross receipts it had omitted them from 1918 on. As a result of this discovery the City claimed there was owing by defendant the sum of $53,705.52. Of this amount defendant admitted liability for $13,309.70, which it paid. The City then brought the present action to recover the balance of $40,395.82. The learned trial judge gave binding instructions in its favor for this amount with interest, a total of $67,737.98, but the court in banc, being of opinion that part of the claim was barred by the statute of limitations, reduced the verdict to $14,438.05. Both parties thereupon appealed to this court, defendant because of refusal by the court below to grant its motion for judgment n. o. v., and plaintiff because of the reduction of the verdict.

The business of defendant involves the installation on the doors, walls and windows of residences and commercial establishments of devices or mechanisms which are connected by wires passing under the streets of the city with a gong or light at the central office of the company, so that if there is an attempt at burglary or any other interference by trespassers the tampering will become known and protection will be afforded.[1] The items of defendant's receipts now in controversy are (1) those derived from construction work done by it on the premises of customers, consisting of the installation of the instrumentalities and devices above referred to, and (2) those derived from its inspections of local alarms which are not connected with the central office and are periodically tested, and, if necessary, repaired.[2] It is defendant's contention that, since this construction and inspection work is done at or below cost, and because no license from the City is required to perform

---

[1] See *Owl Protective Co., Inc., v. Public Service Commission*, 123 Pa. Superior Ct. 382, 384, 385.

[2] This system of local alarms and their inspection did not start until 1925.

such work, the receipts therefrom should not be included in the gross receipts in calculating the percentages due.

This position of defendant cannot be sustained. The language of the ordinance is "the gross receipts of said corporation"—not some of the gross receipts,—"from all its business"—not some of its business or such part of its business as requires a franchise or license from the City. The installation of the mechanisms on the premises of its customers is as much a part—indeed an indispensable part—of its business as any other. By "gross receipts . . . from all its business" must be understood all receipts arising from the employment of its capital. As a consideration for permitting it to operate underground wires in the streets the City could exact whatever payments in the nature of rentals it might deem proper, and in fixing for that purpose a scale of percentages on gross receipts the City was not obliged to limit such receipts to operation charges. It is not material that, as defendant alleges, no profit is derived from the construction work and inspection service; that would be a relevant consideration only if the charge were based on net instead of gross receipts.

In *Commonwealth v. United States Express Co.*, 157 Pa. 579, it was held that where an act imposed a tax on the "gross receipts" of an express company "received from express business" the tax was on the whole of the gross receipts and not merely on so much as remained after deducting the amounts paid to other companies for transportation services. In *Commonwealth v. Brush Electric Light Co.*, 204 Pa. 249, it was held that a tax on the "gross receipts from business of electric light companies" was on all of their receipts and it was immaterial that a portion was derived, not from electric lighting, but from electric power furnished for manufacturing purposes, and from sales of electric supplies such as lamps, drop lights and fans. The court said (p. 252): "The tax is not to be paid upon the gross receipts from electric lighting, but upon the gross re-

ceipts from the business of the company. . . . The statute imposes the tax not upon a portion of its receipts—those derived from a particular commodity it supplies to the public—but upon all of its receipts from its general business conducted under its franchises." In *Commonwealth v. Philadelphia Electric Co.,* 312 Pa. 528, it was held that a tax on the "gross receipts" of electric light companies "received . . . from electric light and power . . . business" applied to receipts derived from the sale of lamps, wire and sockets, from the rental of motors, sweepers, cleaners and other machines, and from labor charges in connection with jobbing work and installations.

Proceeding now to a consideration of the City's appeal, the question raised is whether the statute of limitations is applicable to its claim. The court below held that recovery was limited to the six-year period.

The immunity of the sovereign from subjection to statutes of limitations does not, in the absence of express provision to the contrary, extend to municipalities, counties, townships or boroughs: *Evans v. Erie County,* 66 Pa. 222, 228; *Commonwealth v. Perry,* 330 Pa. 355, 360. It is true that, unless otherwise provided, statutes of limitations cannot be pleaded against such political subdivisions when they are seeking to enforce strictly public rights, that is, when the cause of action accrues to them in their governmental capacity and the suit is brought to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant. Plaintiff earnestly contends that the present case is one of that nature, that the ordinance involves an exercise of municipal control over the highways, that it grants a franchise and is legislative, not contractual, in character. But the consideration exacted in the ordinance is neither a tax nor a license fee; it is in the nature of an annual rental to be paid for the privilege of the use of space under the streets: *McKeesport v. Pitts-*

*burgh, McKeesport & Connellsville Railway Co.*, 238 Pa. 591, 593; *City of McKeesport v. McKeesport & Reynoldton Passenger Railway Co.*, 252 Pa. 142, 145, 146; *Valley Railways v. Mechanicsburg Borough*, 265 Pa. 222, 227. When such an ordinance is accepted and acted on by the grantee of the privilege the corporation becomes contractually bound to pay the consideration and perform the terms and conditions specified in the ordinance, and the contract thereby formed has the same legal status as any other contract: *Norristown v. Norristown Passenger Railway Co.*, 148 Pa. 87, 89; *Collingdale Borough v. Philadelphia Rapid Transit Co.*, 274 Pa. 124, 127; *Norristown v. Reading Transit & Light Co.*, 277 Pa. 459, 462; *Valley Railways v. Harrisburg*, 280 Pa. 385, 392; *City of McKeesport v. McKeesport & Reynoldton Passenger Railway Co.*, 2 Pa. Superior Ct. 242, 248; *Sandy Lake Borough v. Sandy Lake & Stoneboro Gas Co.*, 16 Pa. Superior Ct. 234, 240, 241; *Carlisle & Mechanicsburg Street Railway Company's Appeal*, 54 Pa. Superior Ct. 311, 317; *West Penn Railways Co. v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 89, 95; *City of Chicago v. Chicago Telephone Co.*, 230 Ill. 157, 163, 82 N. E. 607, 610; see also *Metropolitan R. R. Co. v. District of Columbia*, 132 U. S. 1, 12, 13; *Asbury Park & Sea Girt Railway Co. v. Township Committee*, 73 N. J. Eq. 323, 334, 335, 67 A. 790, 794, 795. The obligation of such a contract is protected by the provision of both the State and Federal constitutions against impairment: *Russell v. Sebastian*, 233 U. S. 195, 204.[3]

[3] In *Commonwealth ex rel. v. Devlin*, 305 Pa. 440, 444, and *Breinig v. Allegheny County*, 332 Pa. 474, 487, it was said that a license or permit was not a contract with the municipality which issues it. By this, however, was meant merely that no contract is created until there is an acceptance by the licensee. If there is such an acceptance the latter becomes contractually obligated to perform the terms and conditions of the ordinance upon which the license or permit was granted.

Since, then, the City of Philadelphia is here suing, not to compel the performance of a duty imposed by law, nor to assert a governmental power inherent in it as a municipal corporation, but to enforce a contractual obligation assumed by defendant when it accepted the privilege granted by the ordinance, the statute of limitations is applicable to the suit. This being established, plaintiff seeks refuge in two contentions;—one, that defendant having paid part of the debt within six years prior to the commencement of the suit the statute was thereby tolled; the other, that defendant, by making false returns of its gross receipts, misled plaintiff and concealed from it the facts upon which the present cause of action is founded. Neither contention can be supported. In order that a part payment may stop the running of the statute it must constitute a constructive acknowledgment of the debt from which a promise to pay the balance may be inferred. The defendant's payment of $13,309.70 was to cover deductions which it had previously made in regard to receipts from wires leased from another company, but at the same time it denied liability as to the other items now in controversy. Under such circumstances the statute is not tolled, because, to accomplish that result, the acknowledgment by part payment must be referable to the very debt upon which the action is based: *Graham v. Keys,* 29 Pa. 189; *Foringer v. Sisson,* 14 Pa. Superior Ct. 266, 271, 272. As far as the falsity of the reports made by defendant is concerned, the court below found that "There was certainly nothing in the testimony to show any fraudulent concealment on the part of the defendant, but, on the contrary, nothing more than an honest mistake of the interpretation of the ordinance." All of defendant's gross receipts appeared on its books of account, and these, under the terms of the ordinance, were open at all times to inspection by the City. While each report made by defendant contained an affidavit that it was a true

statement of the gross receipts from operations of the company, in the body of the report the figures returned were stated to be the amount of gross receipts from operations *taxable* under the ordinance. In the computation of the receipts items were omitted after 1918 that had previously been included, but, the receipts never having been itemized, the City was not aware that these items had ever been reported, and was therefore not misled by their subsequent omission. The change was the result of what seems to have been a bona fide belief on the part of defendant that such receipts were not legally taxable. As the court below held, this falls short of such an act of fraud or concealment as suspends the operation of the statute of limitations: *State Hospital for the Insane v. Philadelphia County*, 205 Pa. 336; *McNeely v. Philadelphia National Bank*, 314 Pa. 334, 342, 343.

The judgment is affirmed.